IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| BRADLEY OVERDORFF, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil Action No. 18-79 Chief Magistrate Judge Maureen P. Kelly |
| v. | ) ) | Re: ECF No. 9 |
| NAU COUNTRY INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

**KELLY, Chief Magistrate Judge**

Plaintiff Bradley Overdorff ("Plaintiff" or "Overdorff") initiated this action on January 18, 2018, against Defendant NAU Country Insurance Company ("Defendant" or "NAU"), with a Complaint to Vacate Award of Arbitrator. ECF No. 1. Through his Complaint, Overdorff alleges that the designated arbitrator exceeded his authority in concluding that Overdorff failed to timely initiate arbitration of an underlying crop insurance dispute and therefore was barred from obtaining relief. Overdorff seeks an Order vacating the arbitrator's Final Award. ECF No. 1-3.

Pending now before the Court is a Motion to Dismiss filed on behalf of NAU for failure to state a claim upon which relief may be granted. ECF No. 9. NAU contends that pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et* seq., Overdorff's failure to file suit within three months of the arbitrator's Final Award precludes judicial consideration or review of the instant Complaint. Alternatively, NAU contends that the arbitrator correctly determined that jurisdiction was lacking as a result of Overdorff's failure to timely commence arbitration

proceedings, and so relief is not warranted or available here. For the reasons that follow, the Motion to Dismiss will be granted.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

In the context of the pending Motion to Dismiss, the following facts alleged in the Complaint are accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). Overdorff is an individual who at all times relevant to this proceeding, operated a farm of approximately 150 acres in Indiana County, Pennsylvania. ECF No. 1 ¶¶ 1, 3. Overdorff purchased crop insurance through NAU for his 2011 corn crop. Id. ¶¶ 2, 4. Crop insurance is issued directly or reinsured through the Federal Crop Insurance Corporation ("FCIC") pursuant to the Federal Crop Insurance Act, 7 U.S.C. § 1501, *et seq.*, and is administered by the federal Risk Management Agency ("RMA"). In this case, NAU's policy was reinsured by the FCIC, with administrative oversight by the RMA.[1]

---

[1] In Midland Farms, LLC v. U.S. Dep't of Agriculture, 2015 WL 4603261, at *3 (D.S.D. July 29, 2015), the United States District Court for the District of South Dakota explained the interrelationship between NAU and the FCIA, as well as the genesis of the terms of the crop insurance policy at issue.

> NAU is an Approved Insurance Provider (AIP) of federally-reinsured crop insurance. The Federal Crop Insurance Act (FCIA) established the current system of crop insurance. The FCIA designated FCIC, an agency of and within USDA, to "carry out the purposes" of the FCIA. 7 U.S.C. § 1503. The 1996 Farm Bill established the RMA, which serves as the administrator and manager of FCIC. Federal Agriculture Improvement and Reform Act of 1996, Pub.L. No. 104–127, § 194, 110 Stat. 888, 945–46 (codified at 7 U.S.C. § 6933). RMA is an agency of the USDA and is charged with regulation and oversight of the FCIA. 7 U.S.C. §§ 1501–24. RMA has issued a "standard reinsurance agreement," which establishes the terms and conditions under which the FCIC will provide subsidies and reinsurance on eligible crop insurance contracts sold by AIPs like NAU. See 7 C.F.R. §§ 400.163–64.
>
> > In order to qualify for reinsurance through the FCIC, the policies written by approved private insurers must comply with the FCIA and its accompanying regulations. Consequently, the FCIA generally establishes the terms and conditions of insurance, even though the crop insurance policy is between the farmer and the approved insurance provider.
>
> Davis v. Producers Agric. Ins. Co., 762 F.3d 1276, 1284 (11th Cir. 2014) (internal quotation marks and alterations omitted).

2

After sustaining damage to his corn crop for the year 2011, Overdorff presented a claim under the policy, which was paid by NAU in the amount of $13,417. ECF No. 1 ¶¶ 5-7. On March 26, 2013, pursuant to its oversight function, RMA conducted a compliance review, and determined that Plaintiff abandoned his 2011 corn crop and had failed to follow good farming practices. Id. ¶ 8. Based upon these findings, RMA concluded that Plaintiff had not sustained a covered loss. In accordance with RMA's determination, on July 17, 2013,[2] NAU served Overdorff with a Notice of Debt equal to the indemnity payment remitted, and cited both crop abandonment and failure to follow good farming practices as the basis for the decision. Id. ¶ 10. In the Notice of Debt, NAU demanded payment in the amount of $13,417 within thirty (30) days, and further stated:

> If you do not agree with our decision, you may seek a review of the decision by filing a written request for review within thirty (30) days from the date of this letter. Your written request must be filed with this office at the address shown above and must be submitted with any information you have regarding our decision. **A review does not take the place of or limit your right to arbitration**.

ECF No. 15-3 at 16 (emphasis added).[3]

Overdorff timely sought review of the decision, but did not initiate arbitration proceedings. Overdorff and NAU exchanged correspondence over the course of the next two

---

The federal crop insurance policy provisions are set forth in Part 457 of Title 7 of the Code of Federal Regulations and are the policy terms that AIPs like NAU must offer its insured farmers. The insurance policy provisions specifically at issue in this case, and the policy issued by NAU to the [plaintiff], are in 7 C.F.R. § 457.8 and are entitled the "common crop insurance policy" and commonly are called "basic provisions."

[2] In Paragraph 10 of the Complaint, Plaintiff alleges that the Notice of Debt was dated July 17, 2013. ECF No. 1 ¶ 10. However, the Notice of Debt is dated July 18, 2013. ECF No. 15-3 at 16.

[3] In opposition to the Motion to Dismiss, Overdorff has provided the Court with certain documents, including a copy of the NAU Notice of Debt dated July 18, 2013. Like the policy at issue, this is a concededly authentic document upon which Plaintiff's complaint is based, and therefore may be considered by the Court in the context of the pending Motion to Dismiss. See, e.g., Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

3

years, regarding whether Plaintiff had exercised good farming practices. ECF No. 1 ¶¶ 11, 12. By letter dated July 22, 2015, NAU notified Overdorff that RMA determined that reconsideration based upon alleged good farming practices would not to be afforded. NAU reminded Overdorff that an appeal of the original decision could be pursued in accordance with the identified provisions of the crop insurance policy, including the arbitration provision. Id. ¶ 13. It is apparent that because the Notice of Debt was also predicated upon a conclusion that Overdorff had abandoned the crop at issue, RMA determined that the issue of whether Overdorff exercised "good farming practices," an alternative basis for denial of coverage, was moot. ECF No. 1-3 at 4; 15-3 at 40. Thereafter, Overdorff commenced arbitration proceedings.

In pertinent part, the NAU policy at issue expressly provides as follows:

**20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**

**(a)** If you and we fail to agree on any determination made by us except those specified in section 20(d) [with respect to good farming practices] or (e) [suit against the FCIC for determinations made by it], the disagreement may be resolved through mediation ... If you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), ....

**(b)** Regardless of whether mediation is elected:

(1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

(2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered; and

(4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of the any policy provision or

4

>       procedure, an interpretation must be obtained from FCIC in accordance with 7
>       CFR part 400, subpart X or such other procedures as established by FCIC. Such
>       interpretation will be binding.
>
> **(c)** Any decision rendered in arbitration is binding on you and us unless judicial review is
>       sought in accordance with section 20(b)(3). Notwithstanding any provision in the
>       rules of the AAA, you and we have the right to judicial review of any decision
>       rendered in arbitration.
>
> \* \* \*
>
> **(f)** In any mediation, arbitration, appeal, ... or judicial process, the terms of this policy,
>       the [Federal Crop Insurance] Act, and the regulations published at 7 CFR chapter IV,
>       including the provisions of 7 CFR part 400, subpart P, are binding.... If there are
>       conflicts between any rules of the AAA and the provisions of your policy, the
>       provisions of your policy will control.

ECF No. 1-2 at 3-4.

On January 18, 2017, the arbitrator issued a Final Award. ECF No. 1-3. He recognized the dispute resolution provision in Section 20(b)(1) of the subject crop insurance policy required that arbitration proceedings commence within one year of the date of denial of the claim. Id. at 4. The arbitrator noted that this particular policy provision "comes directly from the governing administrative regulation, which is contained in Section 20(b) of 7 CFR 457.8." Id. The arbitrator found that the Notice of Debt was tendered by NAU on July 18, 2013, and Overdorff did not commence the arbitration until April 13, 2016. Because more than one year elapsed prior to commencement of the arbitration proceedings, the arbitrator ruled, in accordance with Section 20(b)(1), that the dispute was time barred. Id. at 7.[4] Specifically, the arbitrator held that the one year limitation period was jurisdictional and that he did not have the authority to decide a dispute that was not timely submitted. Id.

---

[4] The arbitrator also held that even if the Notice of Debt dated July 18, 2013, was not a final determination, and he accepted the date of the January 26, 2015, letter from RMA as to the date of final determination, the arbitration would have had to be commenced by January 26, 2016, at the very latest. Because the arbitration was not commenced until April 13, 2016, the one-year limitation still barred the claim. ECF No. 1-3 at 8.

5

Overdorff filed the instant action on January 18, 2018, seeking judicial review of the arbitration award. NAU seeks dismissal of this action as untimely for two reasons. First, NAU contends that the FAA precludes judicial review because, by its terms, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." Alternatively, NAU seeks dismissal because Overdorff failed to initiate arbitration within one year of the Notice of Debt, and therefore cannot satisfy a policy prerequisite to judicial review. ECF No. 10 at 2.

The parties have filed extensive briefs and exhibits in support and in opposition to NAU's Motion to Dismiss, and the Motion to Dismiss is now ripe for disposition. ECF Nos. 10, 15 and 16.

## II. STANDARD AND SCOPE OF REVIEW

NAU's Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. ECF Nos. 9, 10 at 3. In assessing the sufficiency of the complaint pursuant to Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).

6

The Court acknowledges the strong presumption in favor of enforcing arbitration awards, and thus the highly deferential review afforded to final arbitration awards. Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers East, 817 F.3d 857, 861 (3d Cir. 2016) (*citing* Brentwood Medical Assocs. v. United Mine Workers of America, 396 F.3d 237, 241 (3d Cir. 2005) and Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)).

Overdorff initiated this action in the form of a Complaint to Vacate Award of Arbitrator. ECF No. 1. The parties agree that this dispute, arising in interstate commerce, is subject to the FAA. 9 U.S.C. § 1; ECF No. 15 at 2; ECF No. 9 at 1; and see Great American Insurance Co. v. Moye, 733 F. Supp.2d 1298, 1302 (M.D. Fla. 2010) (noting the FAA applies to contracts affecting interstate commerce and citing cases finding the FAA applies to crop insurance contracts); Svancara v. Rain and Hail, LLC, 2009 WL 2982906, at *3 (D. Neb. Sept.11, 2009) ("I conclude that a crop insurance policy, reinsured by a federal agency, 'involves interstate commerce'"), In re 2000 Sugar Beet Crop Ins. Litigation, 228 F. Supp.2d 992, 997 (D. Minn. 2002) ("[T]he FAA and other federal laws are applicable" to crop insurance policies), Nobles v. Rural Community Insurance Servs., 122 F. Supp.2d 1290, 1299–1300 (M.D. Ala. 2000).

Pursuant to the FAA, a proceeding to vacate an arbitration award "'shall be made in the form of a motion,' and ... [need not be initiated] by filing a complaint.'" Goldman v. Citigroup Global Markets Inc., 834 F.3d 242, 247 n.3 (3rd Cir. 2016). Whether initiated by a complaint or motion to vacate, however, the scope of this Court's review of is exceedingly narrow. Hall Street Assoc., LLC v. Mattel, Inc., 552 U.S. 576, 584 (2008). Pursuant to Section 10 of the FAA, awards may be vacated:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or either of them;

7

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In assessing Overdorff's entitlement to an order vacating the Final Award, it is not enough to show that the arbitrator committed error; rather, "it is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). In light of the preliminary procedural posture of this action, however, all reasonable factual allegations set forth in the Complaint and gleaned from the exhibits submitted by the parties will be viewed in the light most favorable to Plaintiff.

## III. DISCUSSION

### A. Timeliness of Motion to Vacate

NAU first contends that pursuant to Section 12 of the FAA, Overdorff's twelve-month delay in filing this action precludes judicial review. This contention is readily resolved in favor of Plaintiff. In Epic Systems Corp. v. Lewis, No. 16-285, 138 S. Ct. 1612, 2018 WL 2292444, at *5 (U.S. May 21, 2018), the United States Supreme Court reiterated the long standing principle that, "the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" Id., *quoting* American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 233 (2013). In this instance, the agreement at issue expressly provides that an aggrieved claimant may seek judicial review

8

"not later than one year after the date the arbitration decision was rendered." ECF 1-2 at 3; 7 C.F.R. § 457.8, Section 20(b)(3). Because the terms of the arbitration provision of the crop insurance policy provide the parties thereto one year to seek judicial review, Overdorff's initiation of judicial proceedings is timely and NAU's Motion to Dismiss on this basis is denied.

### B. Scope of Arbitration Agreement

NAU alternatively seeks dismissal of this action because Overdorff failed to timely initiate arbitration to challenge the Notice of Debt and, therefore, in accordance with the express arbitration provision language at issue, is precluded from obtaining judicial review. ECF No. 9; ECF No. 16 at 4-6. The Court agrees.

Overdorff responds and challenges the propriety of the Final Award on the basis that the arbitrator exceeded the authority granted him by the terms of the policy at issue. Overdorff argues that in reaching the result, the arbitrator was required to interpret a policy provision, i.e., whether a Notice of Debt is a "determination" requiring the initiation of arbitration proceedings, or merely a "preliminary" or "initial" decision that was not yet ripe for arbitration. ECF No. 1 ¶¶ 20-25; ECF No. 15 at 5-7. Overdorff points to Section 20(a)(1) of the policy which requires arbitration of disputes concerning "determinations made by us," but excludes from the scope of arbitration those issues involving a "policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure." 7 C.F.R. § 457.8, Section 20(a)(1). Accordingly, Overdorff argues that the pending dispute presents a matter reserved by the parties for agency or judicial review; i.e., interpretation of the word "determination."

Notwithstanding the Court's sympathy for the difficult situation facing Overdorff based on his alleged crop loss and the review initially sought by him, we cannot conclude that

9

interpretation of the word "determination" is required as applied to the Notice of Debt so as to remove his claim from arbitration. The language of the policy at issue, the Notice of Debt itself, and the law with regard to whether a particular dispute is subject to arbitration, place the resolution of this issue squarely within the arbitrator's purview.

Certainly, arbitration is a matter of contract, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002), *quoting* United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). The United States Supreme Court has presciently observed that "[l]inguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits." Howsam, 537 U.S. at 83. The scope of the question is "far more limited," however, to apply to "the kind of narrow circumstance where the contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Id. at 83-84. For further guidance, the Supreme Court cited the approach of the Revised Uniform Arbitration Act of 2000, 7 U.L.A. 12-13 (Supp. 2002), and concluded that "issues of procedural arbitrability", "*i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide," as such issues fall within the expected realm of arbitration. Id. at 85 (italics in original).

As applied here, pursuant to the crop insurance policy at issue, a Notice of Debt gave rise to immediate repercussions with which Overdorff disagreed. The policy provisions with regard to "Life of Policy, Cancellation, and Termination," state in pertinent part:

> (f) A delinquent debt for any policy will make you ineligible to obtain crop insurance authorized under the Act for any subsequent crop year and result in termination of all policies in accordance with section 2(f)(2).
>
> (1) With respect to ineligibility:
>
> > (i) *Ineligibility for crop insurance will be effective on*:
> >
> > (A) The date that a policy was terminated in accordance with section 2(f)(2) for the crop for which you failed to pay premium, an administrative fee, or any related interest owed, as applicable;
> >
> > (B) *The payment due date contained in any notification of indebtedness for any overpaid indemnity*, prevented planting payment or replanting payment, *if you fail to pay the amount owed, including any related interest owed, as applicable, by such due date*; or
> >
> > (C) The termination date for the crop year prior to the crop year in which a scheduled payment is due under a written payment agreement if you fail to pay the amount owed by any payment date in any agreement to pay the debt.

7 C.F.R. § 457.8, Section 2 (italics added); ECF 15-1 at 8-9. The policy language evidences the parties' contemplation that a Notice of Debt arising from an "overpaid indemnity" is a "determination," requiring immediate review or arbitration or payment in full in order to retain insured eligibility for future crop years. The requirement of immediate action does not impute the "preliminary" or "initial" status suggested by Overdorff so as to require agency confirmation that a Notice of Debt is a "determination". Rather, the language terminating a policy for nonpayment leaves no room for interpretation or explanation, but reflects the parties' agreement that a Notice of Debt is a decision requiring immediate action of the part of an insured. As indicated in the Notice of Debt, to the extent Overdorff did not agree with the overpayment

11

indemnity decision, it was a "determination" for which he was permitted to seek review within thirty days and/or initiate arbitration as provided for by the terms of the policy. ECF No. 15-3. 7 C.F.R. § 457.8 20(b)(1).

The fact that Overdorff chose only internal review and bypassed the alternative avenue of relief afforded by timely initiation of arbitration unfortunately limits the relief available to him, as correctly discerned by the arbitrator pursuant to the express language of the policy at issue. Under these circumstances, Plaintiff cannot establish that the arbitrator exceeded the authority granted under the policy at issue, and thus has failed to state a claim upon which relief may be granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendant NAU's Motion to Dismiss the Complaint to Vacate Award of Arbitrator is properly granted. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 31st day of July, 2018, upon consideration of the Motion to Dismiss filed on behalf of Defendant NAU Country Insurance Company, and the briefs and exhibits filed in support and in opposition thereto, it is HEREBY ORDERED that the motion is GRANTED, and the Complaint to Vacate Award of Arbitrator is dismissed.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within

thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

*Maureen P. Kelly*
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing